Affirmed in Part, Reversed and Remanded in Part, and Opinion filed
August 31, 2004









 

 Affirmed in
Part, Reversed and Remanded in Part, and Opinion filed August 31, 2004.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-02-01167-CV

____________

 

AIR ROUTING
INTERNATIONAL CORPORATION (CANADA), 

ARG
PROCESSING & SERVICES, INC. A/K/A AIR ROUTING GROUP CARD SERVICES, INC.,
AIR ROUTING INTERNATIONAL CORPORATION, AND 

AR
GROUP, INC.,
Appellants

 

V.

 

BRITANNIA AIRWAYS,
LIMITED,
Appellee

 



 

On Appeal from the 80th
District Court

Harris County, Texas

Trial Court Cause No. 99-41784

 



 

O P I N I O N








This is an attorney=s fees case
arising under the Texas Theft Liability Act (ATheft Act@), a relatively
new statute that has a unique provision compelling the award of reasonable and
necessary attorney=s fees to a party that successfully
defends against a claim under this act, without any prerequisite that the claim
be found groundless, frivolous, or brought in bad faith.  In this appeal, we review the trial court=s determination
that the successful parties are required to segregate their proof of attorney=s fees for
successfully defending against the Theft Act claim from the attorney=s fees they
incurred in defending against fraud, negligent-misrepresentation, and civil
conspiracy claims brought by the same plaintiff.  Under the Texas Supreme Court=s legal standard
in Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 11B12 (Tex. 1991), we
conclude the trial court erred in requiring segregation because these claims
arose out of the same transaction and because the prosecution or defense of
these claims entailed proof or defense of essentially the same facts.[1]  Accordingly, we sever and reverse the part of
the trial court=s judgment awarding zero attorney=s fees based on
the failure to segregate, and we remand to the trial court for a determination
of the amount of reasonable and necessary attorney=s fees to be
awarded to the parties successfully defending against the Theft Act claim.  We affirm the remainder of the trial court=s judgment.

                        I. 
Factual and Procedural Background

Appellants Air Routing International
Corporation and Air Routing International (Canada) had a contract with the
Royal Bank of Canada (ARoyal Bank@) to operate
certain aspects of a credit-card system used in the aviation industry to pay
for ground handling and other services at various airports throughout the
world.  This credit-card system was known
as the AJet Card.@[2]








Appellee Britannia Airways, Limited is a
charter-airline company incorporated under the laws of England and Wales, with
its principal place of business in Luton, England.  At the times material to Britannia=s claims,
Britannia catered to vacation travelers and offered a variety of flights from
the United Kingdom and Europe to destinations around the world.  Britannia was a holder of the Jet Card and
used it to purchase fuel, maintenance, and other services provided by various
vendors at airports around the world. 
The Royal Bank issued a Jet Card to each aircraft in Britannia=s fleet.  The captain of the aircraft could use the Jet
Card to make purchases from any vendor subscribing to the Jet Card system.  After accepting the Jet Card, these vendors
would submit invoices for charges through the Jet Card system, and would send
the invoices to one of the appellants for processing.  After processing the Jet Card invoices, the
recipient would forward them to the Royal Bank, which would pay the vendors and
send billing statements to Britannia. 
Significantly, Britannia believed that one of the Air Routing companies,
in addition to processing these invoices, would Avalidate and
verify@ all charges
before transmitting the invoices to the Royal Bank.  Air Routing Canada contracted with an
affiliated company, appellant ARG Processing & Services, Inc. a/k/a Air
Routing Group Card Services, Inc. (AARG@) to process Jet
Card invoices.  Appellant AR Group, Inc.
is a holding company affiliated with the other three appellants.   

In late 1998, Britannia learned that it
had paid more than $8 million in Jet Card charges for services that had not
been performed.  Britannia paid these
charges based on false and incorrect invoices for services allegedly provided
by Nile Valley Aviation (ANVA@), a company that
provided supervisory and handling services for Britannia in Egypt.  Britannia filed this suit against appellants
Air Routing International (Canada), ARG, Air Routing International Corporation,
and AR Group, Inc. (collectively referred to herein as AAir Routing@).  Britannia sought to recover more than $8
million in excess charges based on claims of fraud, negligent
misrepresentation, civil conspiracy, and liability under the Theft Act.  Three of the Air Routing parties asserted
counterclaims against Britannia, seeking a declaratory judgment that they were
third-party beneficiaries of certain contracts between Britannia and the Royal
Bank.   








Air Routing filed numerous motions for
summary judgment, including a motion for summary judgment as to the Theft Act
claim.  On September 12, 2001, the trial
court granted Air Routing=s motion for summary judgment as to Britannia=s Theft Act claim.[3]  The trial court denied Air Routing=s motions for
summary judgment as to Britannia=s other three
claims.  At trial in March of 2002, the
trial court granted Air Routing=s motions for
directed verdict as to Britannia=s
negligent-misrepresentation and civil conspiracy claims, and the jury returned
a defense verdict as to the fraud claim. 
The trial court denied relief as to the counterclaims for declaratory
judgment.

The parties agreed to a bench trial as to
the issue of the amount, if any, of reasonable and necessary attorney=s fees that should
be awarded to Air Routing under the Theft Act. 
Britannia and Air Routing agree that the Theft Act requires the trial
court to award Air Routing  reasonable and
necessary attorney=s fees for defending Britannia=s Theft Act claim.








The Theft Act is unusual in Texas law in
that it requires the court to award attorney=s fees to a party
who successfully defends a Theft Act claim, without any prerequisite that the
claim is found to be groundless, frivolous, or brought in bad faith.[4]  See Tex.
Civ. Prac. & Rem Code Ann. ' 134.005(b)
(Vernon 1997); Johns v. Ram-Forwarding, Inc., 29 S.W.3d 635, 637B38 (Tex. App.CHouston [1st
Dist.] 2000, no pet.) (holding Theft Act entitles defendant to recover
reasonable and necessary attorney=s fees in
successfully defending Theft Act claim even if defendant does not recover any
actual damages); Scott A. Brister, Proof of Attorney=s Fees in Texas, 24 St. Mary=s L.J. 313, 316 (1993) (stating that Texas statutes providing for
recovery of attorney=s fees generally do so for a party
asserting a claim or to a party defending a claim that has been found to be
groundless or brought in bad faith).         Air Routing moved the trial court for a
take-nothing judgment as to Britannia=s claims and for
attorney=s fees for its
defense of the Theft Act claim. 
Britannia responded by arguing that the defense of the Theft Act claim
did not fall into any exception to the general rule requiring Air Routing to
segregate the attorney=s fees for defending the Theft Act claim
from fees incurred in the defense of the other claims.  At the bench trial on the attorney=s fees issue, Air
Routing presented numerous billing records and an affidavit establishing Air
Routing=s costs.[5]  The trial court admitted this evidence
without any objection from Britannia. 
Air Routing also called the billing attorney, Kenneth Broughton, as a
witness.  Broughton testified that Air
Routing had incurred $1,909,753.70 in attorney=s fees in this
case up until September 12, 2001, when the trial court granted summary judgment
as to the Theft Act claim.  After
reviewing the billing records, Broughton testified that $1,177,028.30 of these
attorney=s fees relate to
Air Routing=s defense of the Theft Act claim, which
Broughton testified is inextricably intertwined with the defense of the fraud,
negligent-misrepresentation, and civil conspiracy claims.  Air Routing did not seek attorney=s fees for any
work performed on trial-court matters after September 12, 2001, and did not
seek fees under the Theft Act relating to the declaratory-judgment
counterclaims.  Air Routing, however,
also sought appellate attorney=s fees.

Britannia presented no evidence in
opposition to Air Routing=s attorney=s fees
request.  After the bench trial, the
trial court ruled that Air Routing would have to segregate its fees for
defending the Theft Act claim from its fees for defending the other
claims.  Despite this ruling and another
opportunity to segregate, Air Routing declined to segregate the fees,
maintaining its position that applicable law did not require such
segregation.  








The trial court signed a final judgment
ordering that Britannia take nothing on its claims, that Air Routing take
nothing on the counterclaims for declaratory relief, and that Air Routing not
recover any attorney=s fees. 
In this judgment, the trial court stated that the Theft Act claim is not
inextricably intertwined with and does not arise out of the same facts or
occurrences as Britannia=s other claims against Air Routing.  The trial court issued findings of fact and
conclusions of law, which essentially reject Air Routing=s contention as to
the  Ainextricably
intertwined@ exception and provide that the only fees
potentially recoverable are those that Air Routing segregates and shows to have
been incurred in connection with the Theft Act claim.  Ultimately, the trial court found that,
because Air Routing would not adequately segregate those fees incurred in
connection with its defense against the Theft Act claim, it is not entitled to
recover any attorney=s fees in this litigation.

                                            II. 
Issues Presented

Britannia has not appealed the trial court=s judgment.  On appeal, Air Routing presents the following
issues for review:

(1)     Did the trial court err in failing to award
attorney=s fees to Air Routing for its
successful defense of the Theft Act claim and the claims inextricably
intertwined with the Theft Act claim?

(2)     Did the trial court err in finding that Air
Routing=s defense of Britannia=s fraud, conspiracy, Theft Act, and
negligent- misrepresentation claims are not inextricably intertwined?

(3)     Did the trial court err in refusing to
award Air Routing appellate attorneys= fees?

(4)     Are
the trial court=s findings of fact related to Air Routing=s attorney=s fees legally or
factually insufficient or against the great weight and preponderance of the
evidence?

                                         III. 
Standard of Review 













In this appeal, the main issue is whether
the trial court correctly determined that Air Routing had to segregate attorney=s fees incurred in
its defense of the Theft Act claim from attorney=s fees incurred in
its defense of Britannia=s other claims based on the alleged
inapplicability of the Ainextricably intertwined@ exception.  Whether a party seeking attorney=s fees must
segregate fees generated in connection with work relating to one claim or party
from fees generated in connection with work relating to other claims or parties
is a difficult issue that is frequently litigated.  See 
Brister, 24 St. Mary=s L.J. at 342 (stating
that A[o]ne of the
thorniest and most frequently litigated issues involved in proof of attorney=s fees concerns
segregation of recoverable fees@).  The Texas Supreme Court established the legal
standard for determining the applicability of the so-called Ainextricably
intertwined@ exception to the segregation requirement
in the Sterling case.  See
Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 11B12 (Tex.
1991).  Application of this standard
requires determinations as to whether the claims in question arise out of the
same transaction and whether they depend on proof or denial of essentially the
same facts.  See id.  These determinations, in turn, involve an
analysis of both the claims asserted and the facts upon which these claims are
based.  See id.  These determinations, to some extent, involve
an analysis of facts, and the trial court below made these determinations by Afindings of fact.@ Nonetheless, the
Texas Supreme Court has indicated that (1) the trial court, not the jury,
determines the segregation issue, and (2) appellate courts review this
determination de novo.[6]  See id. at 11B12; Houston
Livestock Show and Rodeo, Inc. v. Hamrick, 125 S.W.3d 555, 585 (Tex. App.CAustin 2000, no
pet.) (stating that A[w]hether fees can be segregated between
various claims and parties is a question for the court@ and using
language appropriate to a de novo review); see also Brister, 24 St. Mary=s L.J. at 351 (stating that Athe court decides
which claims must be segregated . . . .@).  In Sterling, the Texas Supreme Court
reversed the trial court=s implied segregation determination and
addressed the appropriate remedy when Aan appellate court
determines that segregation was required.@  See Sterling, 822 S.W.2d at
11.  Rather than remanding to the court
of appeals to conduct an analysis of the sufficiency of the evidence to support
the trial court=s segregation determination, the Texas
Supreme Court held that A[f]ollowing a review of the record, we
conclude that the attorney=s fees are capable
of segregation.@ See id. at 12.  Accordingly, we conduct a de novo review of
the trial court=s segregation determination.[7]  

                                                    IV. 
Analysis

A.      Did the trial court rule that Air Routing
should recover no attorney=s fees because the
trial court found A$0@ to be the amount
of reasonable and necessary attorney=s fees, regardless
of the court=s ruling regarding the Ainextricably
intertwined@ exception? 

Britannia asserts that the trial court
correctly found the Ainextricably intertwined@ exception to be
inapplicable; however, Britannia=s primary argument
on appeal is that legally and factually sufficient evidence exists to support
the trial court=s determination that zero is the amount of
reasonable and necessary attorney=s fees that should
be awarded to Air Routing under the Theft Act, independent of Air Routing=s failure to
segregate attorney=s fees to the trial court=s
satisfaction.  Britannia=s argument
presumes that an independent reason why the trial court awarded zero fees was
that it found that number to be the amount of reasonable and necessary attorney=s fees for Air
Routing=s defense of the
Theft Act claim.  After reviewing the
record, we disagree and conclude that the trial court based its award of zero
fees solely on Air Routing=s failure to
segregate attorney=s fees to the trial court=s
satisfaction.  








The trial court=s judgment states
that Britannia=s Theft Act claim is not inextricably
intertwined with its other claims and that Air Routing has declined to
segregate the fees attributable to defending against the Theft Act claim,
despite having been given an opportunity to do so by the court.  Accordingly, the trial court found that Air
Routing=s evidence did not
establish any amount of segregated fees as to the defense against the Theft Act
claim.  Therefore, the trial court
ordered that Air Routing not recover any attorney=s fees incurred at
the trial court level.

In its findings of fact and conclusions of
law, the trial court makes many of the same findings and, in addition, states:

!       Air
Routing declined to further segregate because it claimed it was not required by
law to do so.

!       Air
Routing=s requested fees were not
reasonably or necessarily incurred in connection with Air Routing=s defense of the Theft Act claim;
rather, most of those fees were not related to the defense of that claim
(finding of fact 13).

!       Because
Air Routing would not segregate its fees further, it failed to prove up any
amount of fees to which it is entitled, so it cannot recover any attorney=s fees. 

!       Air
Routing is awarded A$0@ as a reasonable and necessary
attorney=s fee in this litigation.  Because no appeal on the attorney=s fees issue would be necessary if
Air Routing had segregated its fees as requested by the trial court, Air
Routing is awarded A$0@ as a reasonable and necessary
appellate fee. (conclusion of law 7).

 








Although conclusion of law 7 states that
Air Routing is awarded zero dollars as a reasonable and necessary fee for litigation
in the trial court, reading the findings of fact and conclusions of law as a
whole and in context, it is clear that the trial court did not find that A$0@ was a reasonable
and necessary amount of fees to award for the defense of the Theft Act
claim.  If the trial court had determined
that a reasonable and necessary defense of the Theft Act claim would have
resulted in no fees being incurred, it would not have insisted that Air Routing
segregate its fees because there would have been nothing to segregate.  Indeed, finding of fact 13 indicates that the
trial court believed that some fees were reasonable and necessary.  See Finding of Fact 13 (stating Athe majority of
those fees [requested by Air Routing] were not related to the defense of [the
Theft Act] claim@). 
Further, if the trial court had decided that  A$0@ was a reasonable
and necessary fee for the trial work regardless of the segregation issue, it
would not have stated in conclusion of law 7 that the only reason for an appeal
as to attorney=s fees is the segregation issue.  Under Texas law, if the trial court and a
party seeking attorney=s fees disagree over the applicability of
the Ainextricably
intertwined@ exception, the trial court may conclude
that segregation is required and that, without segregation, the court does not
have sufficient information to determine the amount of reasonable and necessary
fees.  If the party seeking fees refuses
to segregate, the trial court may be forced to deny recovery of fees, as the
trial court did in this case.

Based on both the judgment and the
findings of fact, we conclude that the only basis for the trial court=s award of zero
dollars in fees was its ruling regarding the Ainextricably
intertwined@ exception and Air Routing=s refusal to
segregate further.  The trial court did
not determine the amount of reasonable and necessary attorney=s fees that should
be awarded under the Theft Act. Therefore, Britannia=s various
arguments in support of the trial court=s alleged
determination of this issue are not relevant to our disposition of this appeal.


B.      Did
the trial court err in its determination regarding the Ainextricably
interwined@ exception?

Air Routing asserts the trial court erred
in determining that its defense of Britannia=s Theft Act claim
was not inextricably intertwined with its defense of Britannia=s claims for
fraud, negligent misrepresentation, and civil conspiracy.  As discussed above, we review the trial court=s determination of
this issue de novo.  To analyze this
issue, we must decide issues raised by the parties regarding the legal standard
to apply in making this segregation determination.  Then, we apply that legal standard to the
record in this case to determine if the trial court reversibly erred in
determining that segregation as between the Theft Act claim and the remaining
claims is required.








1.       What is the
proper legal standard for determining whether the Ainextricably intertwined@ exception applies?

 

The parties, most
courts addressing this issue, and this court all agree that the Sterling case
provides the legal standard for determining segregation issues like the one in
this case:

A recognized
exception to this duty to segregate arises when the attorney=s fees rendered
are in connection with claims arising out of the same transaction and are so
interrelated that their Aprosecution or defense entails proof or
denial of essentially the same facts.@  Flint & Assoc. v. Intercontinental
Pipe & Steel, Inc., 739 S.W.2d 622, 624B25 (Tex. App.CDallas 1987, writ
denied).  Therefore, when the causes of
action involved in the suit are dependent upon the same set of facts or
circumstances and thus are Ainterwined to the
point of being inseparable,@ the party suing
for attorney=s fees may recover the entire amount
covering all claims.  Gill Sav. Ass=n v. Chair King,
Inc.,
783 S.W.2d 674, 680 (Tex. App.CHouston [14th
Dist.] 1989), modified, 797 S.W.2d 31 (Tex. 1990) . . . .

Sterling, 822 S.W.2d at 11B12.  The difficulty arises in deciding how to
apply this legal standard.  Britannia
makes two alternative arguments regarding the legal standard for the Ainextricably
intertwined@ exception: 

(1)     The Legal Elements Standard.  In determining whether the defense of the
claims entails proof or denial of essentially the same facts, this court must
consider the facts Britannia would have to prove for each element of the
different claims to see if the claims are proven by the same factual
allegations and legal elements. 

(2)     The Impracticability Standard. To
show that it falls under the Ainextricably intertwined@ exception, a party should have to introduce specific
evidence demonstrating that attempts were actually made to separate the fees by
claim at the time the fees were incurred and that further separation of the
time was impracticable.  

The trial court=s findings of fact
9B11 and conclusions
of law 3B7 show that the
trial court based its segregation ruling on both of these legal standards.  We conclude that the two legal standards
advocated by Britannia are not proper under current Texas law and that Air
Routing=s position
regarding the legal standard is correct.













Britannia correctly asserts that several
courts of appeals, in applying the Sterling standard, have compared the
essential elements of the claims in question. 
See Geodyne Energy Income Production P=ship I-E v. Newton
Corp., 97 S.W.3d 779, 789B90 (Tex. App.CDallas 2003, pet.
granted) (holding segregation was required, in part because the Aclaims have
significantly different elements than [the claim for which attorney=s fees are recoverable]@); Z.A.O., Inc
v. Yarbrough Drive Cent. Joint Venture, 50 S.W.3d 531,  550B51 (Tex. App.CEl Paso 2001, no
pet.) (holding segregation was necessary because breach-of-contract claim
required proof of different elements than other claims); AU Pharm., Inc. v.
Boston, 986 S.W.2d 331, 337 (Tex. App.CTexarkana 1999, no
pet.) (holding trial court should have required segregation because tort claims
Aentailed proof of
facts unnecessary for proof of [the] contract claim . . . .); Aetna Cas.
& Sur. v. Wild, 944 S.W.2d 37, 41 (Tex. App.CAmarillo 1997,
writ denied) (holding that contract and tort claims were capable of segregation
in part because these claims required proof of different elements); Panizo
v. YMCA of the Greater Houston Area, 938 S.W.2d 163, 169B71 (Tex. App.CHouston [1st
Dist.] 1996, no writ) (holding party should have segregated attorney=s fees for fraud
claim from attorney=s fees for contract claim based largely on
the difference between the essential elements of each claim).  However, we decline to apply this approach to
determining segregation because it contradicts the legal standard articulated
in Sterling as well as precedent from this court and the majority of
cases on this issue from other courts of appeals.[8]  See Sterling, 822 S.W.2d at 11B12; Goebel v.
Brandley, 76 S.W.3d 652, 657B58 (Tex. App.CHouston [14th
Dist.] 2002, no pet.) (holding that claimant could recover all of his attorney=s fees because
declaratory-judgment claim in boundary dispute was based on the same facts as
his claims for adverse possession, trespass, and trespass to try title), disapproved
of on other grounds by Martin v. Amerman, 133 S.W.3d 262, 268 (Tex. 2004); Gill
Sav. Ass=n v. Chair King, Inc., 783 S.W.2d 674,
680 (Tex. App.CHouston [14th Dist.] 1989) (holding
claimant did not have to segregate fees between fraud and contract claims
because both claims were based on the same set of facts and circumstances), modified
on other grounds, 797 S.W.2d 31 (Tex. 1990); Panizo, 938 S.W.2d at
171B72 (O=Connor, J.,
dissenting) (stating that need to prove scienter for fraud claim did not change
fact that fraud and contract claims were both based on essentially the same
facts and correctly stating that analysis of majority in Panizo created
conflict with Fourteenth Court of Appeals as to proper standard for analyzing
segregation issue).








Although, to some extent, the legal
elements of the claims will be factored into the segregation analysis in
determining whether the prosecution or defense of the claims entails proof or
denial of essentially the same facts, the plain meaning of Sterling=s legal standard
does not require that the legal elements of the claims be the same or
substantially similar.  See Sterling,
822 S.W.2d at 11B12; Flint & Assocs. v.
Intercontinental Pipe & Steel, Inc., 739 S.W.2d 622, 624B25 (Tex. App.CDallas 1987, writ
denied) (holding that successful sworn-account plaintiff did not have to
segregate its attorney=s fees for prosecuting its claim from its
fees for defending a DTPA counterclaim because the claims arose out of the same
transaction and were so interrelated that their prosecution or defense entailed
proof or denial of essentially the same facts) & id. at 628 (Baker,
J., dissenting) (dissenting from segregation ruling and arguing that
segregation should have been required because the elements of the account claim
are different from the elements of the DTPA counterclaim).  If there were such a requirement, then there
would almost never be an exception to segregation under Sterling because
no two claims have the same elements, and not many claims have similar legal
elements.  In several cases, Texas courts
have found that no segregation is required between fraud and contract claims
based on essentially the same facts, without taking into account the fact that
fraud claims require scienter and reliance and breach of contract claims do
not.  See, e.g., Gill Sav. Ass=n, 783 S.W.2d at
680.  Therefore, we reject Britannia=s analysis and
that of our sister courts of appeals to the extent they add to the Sterling
analysis a requirement that the essential elements of the claims be the same or
substantially similar.








Britannia also argues Air Routing was
required to introduce specific evidence demonstrating that attempts were
actually made to separate the fees by claim at the time the fees were incurred
and that further segregation of the fees was impracticable.  Britannia argues that this is consistent with
federal law, under which an attorney=s fees claimant Ashould maintain
billing time records in a manner that will enable a reviewing court to identify
distinct claims.@  Hensley
v. Eckerhart, 461 U.S. 424, 437, 103 S. Ct. 1933, 1941, 76 L. Ed. 2d 40
(1983) (addressing recovery of attorney=s fees under 42
U.S.C. ' 1988).  However, we are applying the Sterling
legal standard, which is different from the federal standard for determining
whether segregation is required.  See
id., 461 U.S. at 440, 103 S. Ct. at 1943 (stating that A[w]here the
plaintiff has failed to prevail on a claim that is distinct in all respects
from his successful claims, the hours spent on the unsuccessful claim should be
excluded in considering the amount of a reasonable fee@ and that A[w]here a lawsuit
consists of related claims, a plaintiff who has won substantial relief should
not have his attorney=s fee reduced simply because the district
court did not adopt each contention raised@).  Furthermore, federal law requires the party
seeking attorney=s fees to submit detailed documentation of
the services performed, which, in most cases, would consist of billing records
or invoices.  See id., 461 U.S. at
433, 103 S. Ct. at 1939 (stating that A[w]here the documentation
of hours is inadequate, the district court may reduce the award accordingly@) & 461 U.S.
at 440, 103 S. Ct. at 1943 (Burger, C.J., concurring) (stating AI read this Court=s opinion as
requiring that when a lawyer seeks to have his adversary pay the fees of the
prevailing party, the lawyer must provide detailed records of the time and
services for which fees are sought@).  Under Texas law, however, billing records
need not be introduced to recover attorney=s fees.  See Holmes v. Concord Homes, Ltd., 115
S.W.3d 310, 316B17 (Tex. App.CTexarkana 2003, no
pet.) (affirming award of attorney=s fees based on
testimony of counsel without the introduction of any billing records); Schlager
v. Clements, 939 S.W.2d 183, 191B93 (Tex. App.CHouston [14th
Dist.] 1996, writ denied) (same); Brister, 24 St.
Mary=s L.J. at 331 (stating that Abilling records do
not have to be introduced to support a fee recovery@).  Therefore, we find Britannia=s reliance on
federal law to be misplaced.








Britannia also asserts that its second
alternative argument regarding the legal standard  is supported by the Texas Supreme Court=s statement that A[a] failure to segregate
attorney=s fees in a case
containing multiple causes of action, only some of which entitle the recovery
of attorney=s fees, can result in the recovery of zero
attorney=s fees.@  Green Intern., Inc. v. Solis, 951
S.W.2d 384, 389 (Tex. 1997).  Although
Britannia asserts this is a holding, because the Solis court found that
the objection based on failure to segregate was waived, this statement is not
part of the holding.  See id.  It is a nonbinding obiter dictum.  See Edwards v. Kaye, 9 S.W.3d 310, 314
(Tex. App.CHouston [14th Dist.] 1999, pet. denied)
(distinguishing between a nonbinding obiter dictum and a judicial dictum).  Furthermore, while at some point in the
litigation, a repeated refusal to segregate fees might result in an award of
zero, this statement from Solis appears in part to contradict a separate
holding from Sterling. See Sterling, 822 S.W.2d at 11B12 (holding that
if appellate court determines segregation was required but not done, proper
remedy is not that party recover no fees but that judgment be reversed and the
case remanded for more evidence).[9]  We conclude that this obiter dictum from Solis
does not affect the legal standard we must apply to the segregation
determination at issue in this case. 

Although the segregation-exception inquiry
is often referred as a determination of whether claims are Ainextricably
intertwined,@ the language used in Sterling
indicates that if a party proves that the claims arise out of the same
transaction and are so interrelated that their prosecution or defense entails
proof or denial of essentially the same facts, then the fees are deemed to be Ainterwined to the
point of being inseparable,@ and the party
seeking attorney=s fees may recover the entire amount of
fees covering all claims.  See Sterling,
822 S.W.2d at 11B12; Goebel, 76 S.W.3d at 657B58; Gill Sav.
Ass=n, 783 S.W.2d at 680.  Though there may be testimony that a party=s attorney tried
to segregate the fees and could not do so, this is not required under the
current legal standard.  In articulating
the legal standard for the Ainextricably
intertwined@ exception, the Sterling court
cited two cases that did not require a showing of failed attempts to segregate
or actual inability to segregate.  See
Gill Sav. Ass=n, 783 S.W.2d at 680; Flint & Assoc.,
739 S.W.2d at 624B25. 
The language used and cases cited by the Sterling court compel
the conclusion that such a showing is not required to prevail under the Ainextricably
intertwined@ exception.[10]








This conclusion is further confirmed by
the Aiello case, in which the Texas Supreme Court decided that attorney=s fees concerning
issues that already had been decided by an agreed judgment could be recovered
because they were Aintegrally related@ to claims based
on the failure to perform the agreed judgment, even though the claimant=s counsel was able
to segregate the fees for these issues from the other fees.  See Stewart Title Guar. Co. v. Aiello,
941 S.W.2d 68, 79 (Tex. 1997).  The Aiello
case confirms that segregation focuses on the similarity and connection between
the factual issues rather than on whether counsel are capable of segregating
the work and corresponding fees.  See
id.  In sum, we reject as contrary to
controlling precedent Britannia=s second
alternative argument regarding the Ainextricably
intertwined@ legal standard.[11]  See Sterling, 822 S.W.2d at 11B12; Aiello,
941 S.W.2d at 79; Goebel, 76.W.3d at 657B58; Gill Sav.
Ass=n, 783 S.W.2d at 680.  The trial court erred to the extent it based
its ruling on this standard for determining the Ainextricably
interwined@ exception.[12]  Rather, to determine this issue, Air Routing
must show: (1) the attorney=s fees incurred
are in connection with claims arising out of the same transaction, and (2) the
claims are so interrelated that their prosecution or defense entails proof or
denial of essentially the same facts.  See
Sterling, 822 S.W.2d at 11B12 (stating this
standard, then restating this standard and indicating that, if this standard is
satisfied, the fees are deemed to be Ainterwined to the
point of being inseparable,@ and the party
seeking fees may recover the entire amount of fees  covering all claims); Young v. Neatherlin,
102 S.W.3d 415, 420 (Tex. App.CHouston [14th
Dist.] 2003, no pet.); Flint & Assocs., 739 S.W.2d at 624B25.  








2.       As to Air
Routing=s defense of Britannia=s claims, did these claims arise
out of the same transaction and were they so interrelated that their
prosecution or defense entailed proof or denial of essentially the same facts?

We must now
determine whether Britannia=s claims against
Air Routing arose out of the same transaction and were so interrelated that
their prosecution or defense entailed proof of essentially the same facts.  At the bench trial on the attorney=s fees issues, Air
Routing introduced into evidence 565 pages of redacted billing records from Air
Routing=s attorneys.[13]
Air Routing also presented the billing attorney for Air Routing (Broughton),
who testified in pertinent part as follows:

!       On
several occasions, Broughton personally reviewed the 565 pages of Haynes &
Boone billing records introduced into evidence. 
As the billing partner, he reviewed these documents as the invoices were
generated.  He reviewed them again when
they were produced in discovery and a third time in preparation for his
testimony at the attorney=s fees trial.

!       In
defending against claims in this lawsuit through September 12, 2001, Air
Routing incurred a total amount of $1,909,753.70 in attorney=s fees and related expenses.  Based on Broughton=s review of the time entries, Air
Routing was asking the trial court to award $1,177,028.30 in fees relating to
the defense against the Theft Act claim.

!       In
Britannia=s petitions, the alleged facts
supporting Britannia=s Theft Act claim were the same as
the facts alleged in support of Britannia=s other claims.

!       The
work that Britannia claims relates to Air Routing=s contributory negligence also
related to Air Routing=s defense of the Theft Act claim. 








!       Given
the length of time that passed before Britannia attempted to dispute the Jet
Card charges in question, Air Routing needed to determine if someone Aon the inside@ at Britannia had participated in
or allowed the overbilling to occur and this related to Air Routing=s defense against the claim that it
had entered into a conspiracy to commit theft against Britannia.  

!       In
his calculation of fees relating to the Theft Act claim, Broughton did not
include  (1) fees relating to Air Routing=s unsuccessful counterclaim for
declaratory judgment, (2) fees relating to defendants that were dismissed from
the case before trial, and (3) work on alter-ego issues that Air Routing
believed might be raised by Britannia.

!       The
hourly rates charged by Air Routing=s counsel were reasonable rates in Houston, Texas, for a
complex case such as this one, and the attorney=s fees sought by Air Routing
pertaining to the Theft Act factual allegations were reasonable and necessary.

!       If
Britannia had not pleaded the Theft Act claim, Broughton would not have changed
the defense of the case because the allegations regarding the Theft Act claim
were inextricably interwoven with the allegations regarding the fraud,
negligent-misrepresentation, and conspiracy claims.

!       Air
Routing would have had to conduct the same discovery in this case even if
Britannia had asserted only the Theft Act claim.  

!       Air Routing incurred less than $100,000
in attorney=s fees regarding the declaratory judgment
counterclaim.

Although Britannia cross-examined Broughton, it did
not offer any evidence at the trial regarding attorney=s fees.

Our review of the relevant language from
Britannia=s Second Amended Petition shows that
Britannia=s claims are all based on the same
transaction and factual allegations: 

!       Imad
Ghalayini (AGhalayini@) was Air Routing=s agent, and he convinced Britannia
to use the Jet Card to make payments to NVA for services in Egypt.

!       During
this same time period, Ghalayini=s company, Management International Corporation (AMIC@), began a factoring arrangement
with NVA.  Under this arrangement, NVA
would transfer to MIC invoices for services provided to Britannia, and MIC
would make a discounted cash payment to NVA in exchange for the invoices.  To activate payment to itself under the
credit card system, MIC submitted to Air Routing summary billing information
presumably based on the invoice data provided by NVA.  








!       Without
questioning the minimal billing information submitted by MIC, Air Routing
created detailed invoices that were electronically submitted to the Royal
Bank.  Based on the detailed invoices
from Air Routing, the Royal Bank then forwarded payment to MIC and sent its own
invoice to Britannia.

!       As
part of its efforts to promote the credit card program, Air Routing represented
to Britannia that it would validate and verify invoices submitted by vendors
like NVA. 

!       Britannia
regarded this validation and verification service as an integral part of what
it was receiving as a Jet Card subscriber. 
However, from February 1997 through December 1998, Air Routing accepted
summary billing information which did not contain details sufficient to carry
out a validation and verification of the charges as promised. Air Routing
deliberately failed to create or follow a validation and verification system to
detect duplicate or fraudulent charges from vendors. Air Routing created
detailed invoices which they forwarded to the Royal Bank without requiring
their agents to submit any documentation to support the billings.

!       In
late 1998, Britannia learned that much of the billing information supplied by
Air Routing to the Royal Bank relating to services supposedly provided by NVA
to Britannia was invalid.  Because of
false and incorrect billing information submitted by MIC through Air Routing,
Britannia paid over $8 million in excess charges from February 1997 to December
1998.  These fraudulent charges were
maliciously and intentionally submitted by Air Routing and Ghalayini for the
purpose of defrauding Britannia.

!       Because Ghalayini was Air Routing=s agent, Air
Routing is legally liable for Ghalayini=s actions in
submitting fraudulent invoices through MIC. 

Relying on these factual allegations,
Britannia alleged fraud and negligent-misrepresentation claims based on (1) Air
Routing=s alleged
representations to Britannia that it would validate and verify billing
information submitted by NVA and (2) Air Routing=s alleged
malicious and intentional forwarding of false billing information to the Royal
Bank.  Britannia asserted that it relied
on Air Routing=s alleged misrepresentations to its
detriment in paying for services that it had never received from NVA. 








Relying on these same factual allegations,
Britannia alleged that Air Routing and Ghalayini entered into a civil
conspiracy to defraud Britannia by submitting fictitious or duplicative
invoices for services that had not been performed by NVA and thus causing
Britannia to pay substantial amounts that were not owed.  Again relying on these same factual allegations,
Britannia alleged that (1) Air Routing also entered into an agreement to steal
substantial amounts of money from Britannia, (2) to this end and in violation
of the Theft Act, Air Routing deceived Britannia into paying invoices for
services that had never been performed by NVA. 
All of Britannia=s claims involve allegations that Air
Routing deceived Britannia into paying for services that NVA never
performed.  Britannia sought the same
damages for all of its claims C the more than $8
million that Britannia paid for services NVA did not perform.

Britannia=s response to Air
Routing=s motion for
summary judgment as to the Theft Act claim[14]
also shows that Britannia=s claims were based on the same
transaction and essentially the same facts. 
In this response, Britannia characterized its Theft Act claim by making
the following allegations:

!       Air
Routing intentionally and unlawfully appropriated funds from Britannia by  propagating false invoices and
overcharges.  

!       Theft
may be proven by representations of a defendant that induce the plaintiff to
pay money, if the defendant had an intent to deprive plaintiff of the money.

!       Air
Routing violated the Theft Act by accepting and allowing overcharges to be
processed in direct opposition to Air Routing=s representations that it would
verify and validate invoices, including representations made in Air Routing=s brochure.








!       Air
Routing violated the Theft Act because, having sole and exclusive control of
the invoice summaries that exposed the overcharges, Air Routing frequently
acted to override warnings from its own computing system exposing potential
overcharges by the vendors.  Such actions
by Air Routing made it possible for Air Routing to appropriate Britannia=s property.  Air Routing actively participated in the
series of invoicing actions that caused the unlawful appropriation of Britannia=s property. Air Routing improperly
obtained amounts of Britannia=s money from the overcharges, as a result of commissions
obtained on each transaction processed. 

!       Britannia
has presented adequate evidence that Air Routing conspired with Ghalayini to
defraud and/or steal from Britannia.  

!       Britannia
has presented sufficient evidence to show that Air Routing participated in the
invoice processing service that defrauded Britannia,  resulting in a profit to Air Routing. 

!       Air Routing enabled the fraudulent
invoicing actions of Ghalayini and MIC.

In responding to Air Routing=s motion for
summary judgment as to fraud and negligent misrepresentation, Britannia also
relied on alleged misrepresentations in the same brochure:

As an integral and essential part of the Jet Card program,
Air Routing represented that it would validate and verify invoices submitted
by vendors.  Air Routing assumed the
responsibility of making sure their clients, including Britannia, were not
improperly charged by suppliers.  Air
Routing=s own promotional
materials contain these representations. 
In promoting the system, Air Routing promised that it would validate
charges to Acorrect inaccuracies that could otherwise
go unnoticed.@ See IATA Global Charge Programme,
attached as Exhibit 3.  (emphasis
added).[15]  








Of the four exhibits attached to Britannia=s response to Air
Routing=s motion for
summary judgment as to the Theft Act claim, three were also attached to
Britannia=s response to Air Routing=s motion for
summary judgment as to the fraud and negligent-misrepresentation claims.[16]  Thus, in its responses to Air Routing=s motions for
summary judgment, Britannia indicates that all of its claims are based on the
same factual allegations C that Air Routing deceived Britannia into
paying for services that NVA never performed.[17]  

After reviewing the evidence presented at
the bench trial as to the attorney=s fees issues, the
allegations in Britannia=s petition, and Britannia=s description of
its claims in its responses to Air Routing=s motions for
summary judgment, we conclude that Britannia=s claims against
Air Routing arose out of the same transaction and were so interrelated that
their prosecution or defense entailed proof of essentially the same facts.  See Hamrick, 125 S.W.3d at 585B86; Goebel,
76 S.W.3d at 657B58; Chilton Ins. Co. v. Pate & Pate
Enterprises, Inc., 930 S.W.2d 877, 896 (Tex. App.CSan Antonio 1996,
writ denied); Gill Sav. Ass=n, 783 S.W.2d at
680.








Britannia asserts a number of arguments in
support of its contention that its claims against Air Routing did not arise out
of the same transaction and were not so interrelated that their prosecution or
defense entailed proof of essentially the same facts.  Britannia argues Air Routing spent a
significant amount of time attempting to develop a contributory negligence
defense even though this defense does not apply to any of Britannia=s claims.  Britannia also asserts that Air Routing did
not show that the work regarding its alleged contributory negligence defense
related to the Theft Act. Presuming, as asserted by Britannia, that
contributory negligence, as a matter of law, was not a defense to any of
Britannia=s claims, then any facts relating to
contributory negligence are not facts entailed in the prosecution or defense of
Britannia=s claims and are not relevant to the Ainextricably
intertwined@ exception.  Britannia=s arguments in
this regard relate to the issue of whether Air Routing=s attorney=s fees are
reasonable and necessary.  See Tex. Civ. Prac. & Rem. Code ' 134.005(b).  As previously discussed, the trial court has
yet to determine this issue and is free to consider these arguments on remand
in the context of its determination of the amount of reasonable and necessary fees
that should be awarded.[18]








On appeal, Britannia states it did not sue
Air Routing directly for Theft Act liability but only alleged a Theft Act
violation as an unlawful, overt act in support of its conspiracy theory.  This is not what Britannia=s pleadings and
assertions in the trial court reflect. 
Britannia did allege that Air Routing conspired to defraud Britannia
into paying amounts it did not owe and that Air Routing conspired to steal
money from Britannia.  However, Britannia
also pleaded that Air Routing accomplished its alleged plan to steal money from
Britannia in violation of the Theft Act Aby deceiving
Britannia into paying for services never performed by NVA.@  This is an allegation of direct liability
under the Theft Act, which would impose civil liability on Air Routing if, with
the intent to deprive Britannia of its money, Air Routing committed theft by
using deception to induce Britannia to consent to Air Routing=s appropriation of
Britannia=s money. 
See Tex. Civ. Prac. &
Rem Code ' 134.002 (defining Aperson@ to include a
corporation and defining Atheft@ to include
various alternative definitions of theft from the Texas Penal Code); id.,
'134.003(a)
(imposing civil liability); Tex. Pen.
Code. ' 31.01(1) (defining Adeception@ as, among other
things, Acreating or
confirming by words or conduct a false impression of law or fact that is likely
to affect the judgment of another in the transaction, and that the actor does
not believe to be true@); id., ' 31.01(3)
(defining Aeffective consent@ to include Aconsent by a
person legally authorized to act for the owner@ but to exclude A[c]onsent . . .
induced by deception . . .@); id., ' 31.03(a), (b)
(stating that a person commits theft Aif he unlawfully
appropriates property with intent to deprive the owner of property@ and that A[a]ppropriation of
property is unlawful if . . . it is without the owner=s effective
consent@).  In its response to Air Routing=s motion for
summary judgment as to the Theft Act claim, Britannia stated that it was
asserting a direct claim against Air Routing under the Theft Act. 








In a similar vein, Britannia asserts that
its Theft Act claim did not involve the same facts because it arose from Air
Routing=s alleged handling
of stolen property while the fraud and negligent-misrepresentation claims arose
from false statements in the bills.  For
example, Britannia argues that to prove its fraud claim Britannia had to show
Air Routing knowingly lied and Britannia was damaged by its reliance on those
lies, whereas Britannia could have proven theft simply by showing Air Routing
knew it was a conduit for stolen property. 
Britannia is correct that it could have asserted a Theft Act claim based
on Air Routing=s alleged appropriation of Britannia=s property,
knowing the property was stolen by another and with the intent to deprive
Britannia of the property.  See Tex. Civ. Prac. & Rem Code ' 134.002(2)
(defining Atheft@ to include the
definition of theft under Tex. Pen. Code
' 31.03); Tex. Pen. Code. '
31.03(a),(b).  However, as reflected by
Britannia=s petition and summary-judgment responses,
the record in this case shows that Britannia never asserted such a claim
against Air Routing; rather, it alleged that Air Routing violated the Theft Act
Aby deceiving
Britannia into paying for services never performed by NVA.@ Britannia did not
assert that Air Routing was a conduit for property that it knew others had
stolen from Britannia.  We should not
ignore what is, based on what might have been.

Finally, Britannia states that the true
question is how much the attorney=s fees would have
been if the Theft Act claim had been the only claim asserted in this case.  Britannia asserts Air Routing introduced no
evidence in this regard.  Although this
may be a relevant consideration, under the applicable legal standard, this is
not the ultimate question as to the Ainextricably
intertwined@ exception.  In any event, Broughton testified that Air
Routing would have had to conduct the same discovery in this case even if
Britannia had asserted only the Theft Act claim.  

In sum, we find Britannia=s arguments
regarding the Ainextricably intertwined@ exception
unpersuasive, and we hold that the trial court erred in determining that this
exception does not apply to Britannia=s claims.  Britannia has not asserted that, if the trial
court erred in this regard, the error was harmless.  Because, as stated above, the trial court
awarded no attorney=s fees to Air Routing based on its
determination of this issue, we hold that this error probably caused the
rendition of an improper judgment.  See
Tex. R. App. P.  44.1(a). 
Similarly, the trial court awarded zero dollars in appellate attorney=s fees because it
stated that no appeal on the attorney=s fees issue would
be necessary if Air Routing had further segregated its fees as requested by the
court.  Because we have ruled in Air
Routing=s favor on the
segregation issue, we hold that the trial court also reversibly erred in
awarding zero dollars in appellate fees.








                                                 V. 
Conclusion

The law regarding
the Ainextricably
intertwined@ exception to the general segregation rule
is complicated.  As an intermediate court
of appeals, we apply the law in this area as promulgated by the Texas Supreme Court.  Based on our de novo review of the trial
court=s determination
regarding the applicability of the Ainextricably
intertwined@ exception, we conclude that Britannia=s claims against
Air Routing arose out of the same transaction and were so interrelated that
their prosecution or defense entailed proof or denial of essentially the same
facts.  We hold that the trial court
reversibly erred in denying Air Routing recovery of attorney=s fees based on
the court=s 
erroneous ruling regarding the Ainextricably
intertwined@ exception, and we sustain Air Routing=s four issues on
appeal.  Accordingly, we sever and
reverse the trial court=s judgment regarding the amount of
reasonable and necessary trial and appellate attorney=s fees to be
awarded to Air Routing under the Theft Act. 
We remand this portion of the trial court=s judgment for
further proceedings in accordance with this opinion, and we affirm the
remainder of the trial court=s judgment.  Though this court=s ruling on the
applicability of the Ainextricably intertwined@ exception will be
binding on the trial court on remand, the issue of the amount of reasonable and
necessary fees has not yet been determined, and our decision today does not
limit the parties as to the arguments they may wish to make in this regard on
remand.  

 

 

/s/      Kem Thompson Frost

Justice

 

Judgment
rendered and Opinion filed August 31, 2004.

Panel
consists of Justices Edelman, Frost, and Guzman. (Edelman, J., concurs without
opinion).











[1]  For the sake
of convenience, we sometimes refer to this determination of whether segregation
is excused under Sterling as the Ainextricably
intertwined@ exception.  See
Sterling, 822 S.W.2d at 11B12.





[2]  Later, the AJet Card@ became known as the AIATA Global Charge Card Programme.@ 
For the sake of convenience, we refer to this card as the AJet Card@ in this opinion. 





[3]  Our record
contains no order granting Air Routing=s motion
for summary judgment as to the Theft Act claim; however, it does contain a
docket entry indicating the trial court granted this motion on September 12,
2001.  We are not basing this decision on
the docket entry.  Rather, the trial
court=s findings of fact indicate this motion was granted on
September 12, 2001, and Air Routing and Britannia both agree on appeal that
this motion was granted on this date. 
Therefore, we presume for the purposes of this appeal that the trial
court granted this motion on September 12, 2001.  





[4]  Air Routing
also sought attorney=s fees in the trial court under the Texas Declaratory
Judgment Act based on the counterclaims; however, the trial court ruled that
Air Routing was not entitled to attorney=s fees
based on the counterclaims for declaratory judgment, and Air Routing has not
challenged this ruling on appeal.





[5]  There is no
issue on appeal regarding court costs, which the trial court awarded to Air
Routing.





[6]  Writers on the
subject have observed that there are many factors to consider in determining
whether the segregation determination should be a matter of law decided only by
the trial court or an issue of fact to be resolved by the finder of fact.  See ,e.g., Brister, 24 St. Mary=s L.J. at 351B52
(suggesting that it might be better to eliminate the judicial determination of
the segregation issue and allow juries to consider whether the fees are
intertwined as part of their factual determination of the amount of reasonable
and necessary attorney=s fees).  As an
intermediate court of appeals, we are bound by the Texas Supreme Court=s resolution of this issue, so we express no opinion
in this regard and leave any consideration of changing the law to our high
court.  See In re K.M.S., 91
S.W.3d 331 (Tex. 2002).





[7]  Although Britannia
initially asserted that we should review this determination under a legal and
factual sufficiency standard of review, in a post-submission letter brief,
Britannia now has agreed that the de novo standard of review applies to this
issue.  Therefore, at present, the
positions of all parties are consistent with our determination that we should
review the segregation issue de novo.

 





[8]  The majority
of cases from courts of appeals applying the Sterling standard for
segregation have focused on the facts at issue in the case and not on the
differences between the legal elements among the claims asserted.  See, e.g., Park Cities Ltd P=Ship v. Transpo Funding Corp., 131 S.W.3d 654, 662 (Tex. App.CDallas 2004, pet. filed); Hamrick, 125 S.W.3d
at 585B86; Willis v. Donnelly, 118 S.W.3d 10, 46B47 (Tex. App.CHouston
[14th Dist.] 2003, pet. filed); Young v. Neatherlin, 102 S.W.3d 415, 420
(Tex. App.CHouston [14th Dist.] 2003, no pet.); West Beach
Marina, Ltd. v. Erdeljac, 94 S.W.3d 248, 268 (Tex. App.CAustin 2002, no pet.); Chilton Ins. Co. v. Pate
& Pate Enterprises, Inc., 930 S.W.2d 877, 896 (Tex. App.CSan Antonio 1996, writ denied).  





[9]  Indeed, after
determining that a party had not shown that fees were inextricably intertwined,
the Dallas Court of Appeals has gone so far as to state that this determination
would not bind the trial court on remand and that the trial court was free to
revisit the applicability of the Ainextricably
intertwined@ exception.  See
Geodyne Energy Income Production P=ship
I-E, 97 S.W.3d at 789B90.  This court
has held to the contrary regarding the binding nature of an appellate court=s determination of the Ainextricably
intertwined@ exception.  See
Willis, 118 S.W.3d at 47B48 (holding that Ainextricably
intertwined@ exception did not apply, that trial court erred by
not requiring segregation, and that case should be remanded to trial court for
determination of the amount of the segregated attorney=s fees).





[10]  We note,
however, that a legal rule that accommodated some of the concerns addressed by
Britannia=s proposed legal standard would further the rationale
underlying the general rule requiring segregation and also promote fairness and
efficiency.  For example, even if
Britannia=s claims arose out of the same transaction and their
prosecution or defense entailed proof or denial of essentially the same facts,
it is not clear why Air Routing should be able to recover fees for work related
solely to legal research and motions for summary judgment ­based on legal
elements not included in the  Theft Act
claim, such as Air Routing=s research, drafting, and presentation of a motion for
summary judgment asserting no evidence of reliance.  If the factual allegations are essentially
similar, it makes sense that the fees for legal work regarding the facts need
not be segregated, but it is not clear why partial segregation should not still
be required as to fees relating to legal issues not part of the Theft Act
claim.  However, the Texas Supreme Court
has adopted a different legal standard, which we are bound to follow.  See Sterling, 822 S.W.2d at 11B12; Stewart Title Guar. Co. v. Aiello, 941
S.W.2d 68, 79 (Tex. 1997); Goebel, 76 S.W.3d at 657B58. 





[11]  Britannia also
relies on Amerada Hess Corp. v. Wood Group Prod. Tech., 30 S.W.3d 5, 14
(Tex. App.CHouston [14th Dist.] 2000, pet. denied).  This court=s ruling
in that case appears to have been based on a determination that the claims
against Hess and against Graham were not so interrelated that their prosecution
or defense entailed proof or denial of essentially the same facts.  See id.  In any event, to the extent the case stands
for the proposition that parties in Air Routing=s
position must prove that the attorney=s fees
for the claims simply cannot be separated despite attempts to do so, then, to
this extent, it imposes a requirement not prescribed by controlling
precedent.  See id.; Sterling,
822 S.W.2d at 11B12; Aiello, 941 S.W.2d at 79; Goebel, 76
S.W.3d at 657B58; Gill Sav. Ass=n, 783
S.W.2d at 680. 





[12]  See Findings of Fact 9B13, Conclusions of Law 3B7. 





[13]  On appeal,
Britannia complains that these records are heavily redacted.  Britannia; however, did not object to the
admission of these records in the trial court, and notwithstanding the
redactions, under the applicable legal standard, the record in this case is
sufficient for a court to rule regarding the Ainextricably
intertwined@ exception.





[14]  Air Routing
filed various motions for summary judgment, including a motion for summary
judgment as to fraud and negligent misrepresentation, a motion for summary
judgment as to the Theft Act claim, and a no-evidence motion for summary
judgment attacking all of the essential elements of Britannia=s claims.  





[15]  We presume the
trial court took judicial notice of the contents of its file in this case,
which included these summary-judgment responses.  See Holley v. Holley, 864 S.W.3d 703,
706 (Tex. App.CHouston [1st Dist.] 1993, writ denied) (stating A[t]he trial court may properly take into
consideration  the file that is before it
. . . [w]e presume the trial court took judicial notice of its files@).





[16]  The same
brochure and deposition excerpts from Penny LaBree were attached to both
responses, and excerpts from George McNish=s
deposition were attached to both responses, although one page of the McNish
excerpts was different as between the two responses.





[17]  This position
is also confirmed by Britannia=s argument to the trial court during the hearing on
Air Routing=s motion for summary judgment as to the Theft Act
claim.  At that hearing, Britannia=s counsel stated:

 

In a nutshell, our claim on the theft law is that they
and/or their agents unlawfully appropriated our money with [sic] is theft under
Texas law and entitles us to get the money back . . . there=s clearly all kinds of circumstantial evidence here
that they knew or at least should have known and their agents clearly knew that
they were misappropriating our funds.

. . .

It=s also clear that if the invoice [sic] were made up,
they were made up by one of the defendant=s agent
[sic] which is further evidence that defendants are liable for the
misappropriation or unlawful appropriation of Britannia=s money and therefore are liable for theft.

 

The
characterization of Britannia=s Theft Act claim during argument in open court may be
used by a court in determining Britannia=s
position in this case and the nature of its claims.  See Sedgwick v. Kirby Lumber Co., 130
Tex. 163, 107 S.W.2d 358, 359B60 (1937); see also Holley, 864 S.W.3d at 706
(stating A[t]he trial court may properly take into consideration
. . . the proceedings that are conducted in its presence@). 





[18]  Broughton
testified that the discovery regarding contributory negligence also related to
issues such as whether a Britannia employee might have stolen the money.
Britannia asserts that even if Air Routing had been able to show that a
Britannia employee was involved in the alleged theft, that fact would not have
exonerated Air Routing from its alleged Theft Act liability.  Again, this issue relates to the
determination of the reasonableness and necessity of the fees, rather than
whether the Ainextricably intertwined@
exception applies.